Good morning. May it please the Court. I'm Jim Bickerton, attorney for the Plaintiffs' Appellants. I'd like to start this morning by looking at something that I think really controls this case completely, and that's the standard of review. And although in the general sense, when one is reviewing an order related to class certification, the overall question is whether or not the lower court abuses its discretion. You must first decide whether the lower court correctly teed up the legal question, and whether it has made a set of clearly or non-clearly erroneous facts with which it can apply that law. And then once the lower court has that, you can decide if it had all those things, was its decision an abuse of discretion. So when the lower court makes a mistake of law on the controlling law that governs the merits of the claim, then the question before you is one de novo. And what that means is that you have to ask yourselves, would you reach the same conclusion about what Hawaii law is if you were starting from scratch? There's no deference at all given to the district court. And if we look at the opinion and we see what were the questions of law that the district court found controlling, we find that there was one in particular that infected both of the two prongs that it ultimately ruled on. It ruled upon the predominance point under Rule 23b3, and it ruled upon the superiority point. And in both cases, the court was highly influenced by its decision that there would be an extensive inquiry into the individual state of mind of each consumer. So let's just assume for a minute that under Hawaii's consumer protection statute that's in play here, that for a deceptive act, it's really an objective test. Yes. Okay. And that seems to be what I gather, you know, for the way you look at whether something violates the statute, you look at it objectively. But the statute goes on to say that if the plaintiff or the consumer is claiming damages, it proceeds it by saying an injured party or an injured person can bring a claim for damages. Now, doesn't that suggest that there has to be some causal connection between the deceptive practice, which may be determined on an objective basis, and whether or not that practice caused injury to the plaintiff? It does. And we have not shied away from that. Our reply brief discusses it to this extent. As your argument here is that the practice here was just so deceptive that for your proposed class, it was just inherently harmful or injurious. Well, that may be overstating our position. I mean, it is in that line. But I don't think that you look at how extreme the practice is. I think what you look at is the materiality, the intrinsic materiality of what was concealed. Would that cause a reasonable consumer? In other words, we don't dispute there's a causal link. We say that in consumer statutes, the causal link is provided in different ways than traditional fraud reliance. And the classic example is with even in fraud cases, if the fraudulent act was an omission, it's very difficult to prove what somebody would have done if they had known something. And in fraud cases, the test typically is, if you look at the restatement, if a reasonable person would have acted differently than this person acted with the information that was withheld, then you've got causation. You don't have to penetrate the mind of the individual and say, well, would they have acted differently? The affiliated Ute case, which is a 10b-5 case, it really lays out that idea. And we're not suggesting that 10b-5 loses control here. But that concept is much more like the ideas that the court in Hawaii and other courts that apply these consumer statutes use. So you're looking at an objective test. You're saying causation is met if an objective standard is met on causation as well. We agree the Hawaii Supreme Court has clearly stated that whether there's a violation, that's an objective standard. What we're saying is you can also apply an objective standard to the causation element. It doesn't have to be individualized to each individual. You'd still have to show that each individual has suffered damage. Yes, you would. And the cases are legion that say that is not going to defeat class certification. That doesn't cause me as much concern. I just wanted to make sure I understood your position with respect to the causal connection. There's a phrase that I reviewed again in one of our briefs that struck me, and it was in a way it's similar in the stock cases to this idea of a fraud on the market. This product maintains its position. It's able to be put before these purchasers because it has elbowed its way into the market by saying these things. And so a lot of consumers, individual consumers' financial sophistication may be different, and some may be even smart enough, a tiny fraction may be smart enough to figure out where the P is under which shell. But the only reason that thing is even before them, the only reason there's even an agent pushing it, and the only reason that it's able to compete with real products that actually offer something is because of the deception. That's the causal link. And the other causal link is that the person puts down their money. That's the cause of injury. The statute says have you been injured by the deceptive act. Reliance is one way you can be injured, and in fraud cases you must prove reliance. But the consumer cases are far broader and more flexible. Well, let me ask you another question as long as we're here. It seems to me that you argue that the state courts do not require subjective reliance, only whether an allegedly deceptive practice is likely to lead consumers acting reasonably under the circumstances. Now, my worry is that I've tried to look at this statute, and it seems to me that it's tried to mirror the federal statute. So what we really need is a representation, omission, or practice likely to lead consumers under the circumstances where the representation, omission, or practice is material. Under the circumstances is my biggest problem because it doesn't seem to me that much similar to the district court that one can suggest that the representation, omission, or practice under the circumstances is that way without looking at individual situations. I'm talking about the circumstances themselves because the circumstances then are likely to affect their choice. The material, I mean, if it comes, if it's material, likely to affect their choice. So that's why the district court said given that this situation is that Midland doesn't sell these, independent brokers sell them, that we have information, yes, which is generally the same, but the brokers sell them, and the brokers can be a part of the action but really doesn't present to this particular point. The circumstances of the sale and the brokers having sold them, we can't get out of under the circumstances under the statute. And even if I say there's a subjective reliance, I've still got to have the circumstances of the sale before me. How do I get around that? Well, you'll have to forgive me, but I'm not familiar with where you're drawing the under the circumstances phrase from. Well, the deceptive act or practice is, under the statute, a representation, omission, or practice. That, number two, is likely to mislead consumers acting reasonably under the circumstances. That's under Corbott, 141P3, where the representation, omission, or practice is material. I understand that. That is a question that it is true that the circumstances may vary individually to individually and that each one has a different broker, but what the question that you're trying to decide here is what predominates? What are the circumstances? How can I determine a predominant if everyone is approached by different brokers, no particular contract with Midland, everyone saying what they want to say, though they make covenant that they give the material to the people, that this is a general overall circumstance that I can apply, which is exactly what the district court was arguing. Well, they do, actually, more than that. There is the requirement that the agent certify that he has in no way contradicted any of the written material. All that is is a way for Midland to sue the agent after they get sued. Well, I take it that you're not going to concede that under the Hawaii has held that you can't have a class action because if you interpret in the circumstances that to be always individualized circumstances, then I suppose you could never have a class action. I think I would agree with that also because of subsection C of the very same provision that specifically says these are appropriate for class action. Yes, exactly. So I suppose that what is troubling me is that if we accept the position that there are common elements to the approach that brought these things onto the market and what was being sold that are common to the product into what was being marketed. I mean, I'm not saying that very well, but if we assume that the district court was wrong in relying on these individualized circumstances to say that the combinations don't phenomenate, then what concerns me is that you're not going to be able to have your cake and eat it, too. That is, you're not going to be able to go forward on class action and then start arguing that these particular representations and call witnesses to say this is what was said to me or I was deaf and the guy knew it. Well, I don't think that that's ever been our case, and we've suffered a lot, I think, below because a very excellent counsel on the other side throws up a ton of stuff that really isn't about our case. And I hope to reserve a little time, but I will attempt that here. You're just saying that that's never been your position. No, that's not what our case is. Our case is that Midland sells this big, nice, shiny box. It's a machine, and they tell the customer, this machine will preserve your money and it will grow. And they say, wow, that's great. How does it work? Here's a manual. Here's a brochure. The broker can tell them all kinds of great things about this machine. They can't contradict anything in the manual or the brochure. What they're not told, and they're given material that makes them think they know everything, they're not told is that actually we pulled a whole bunch of the money out of a little slot in this machine. The reason that you can't get your money back is not disclosed. They tell them, and they got the district court with this, too. You can read it in the district court opinion when he recites how Midland defends this. He talks about Midland says that they need – I'll see if I can find it very quickly. These liquidity provisions are there because the – Midland needs a stable pool of cash in order to be able to generate these returns. That's not true. The reason that the money's frozen with all these penalties for taking it out is because it's gone. Someone snuck it out of a little hole in the machine. The consumer thinks they have this nice machine, and there's a little dial on there that's telling it how much money – telling the consumer how much money is still in there. But it's illusory and fictitious. The money is gone. The dial is just a dial. And if they knew that, they wouldn't buy this product. That's our basic case. We think it's unfair and deceptive no matter what the broker says. I would like to reserve a minute. You have about a minute and a half. Thank you. May it please the Court. Robert Phillips with Jeffrey Portnoy for Midland. Mr. Bickerton conceded, as I think he must, that the statute does require proof of causation. And I believe that Judge Smith's comment is on point in looking at the context. We're not saying that there can't be class actions under Hawaii law. The context here is what controls. Circumstances do count. Circumstances on the record below clearly vary widely. And what that means is that inducements vary widely. Even some of the named plaintiffs acknowledge that they were not induced by the Midland standardized marketing materials, that they didn't read anything before they made their decision to buy. They relied entirely on these customized oral statements. So the circumstances are necessary. The circumstances have to be examined in order for determination to be made as to causation. In the context of these kinds of sales, where independent agents who are almost always authorized to sell Midland's competitors' products as well, in addition to mutual funds and the like, make a choice, make a recommendation, and customize those sales presentations so you have an inducement that varies from situation to situation, and that affects the causation analysis. And as a practical matter, if we were to try these cases, Midland has a right to come in and show that a particular alleged omission was not the cause of the purchase or the cause of an injury. It's particularly important in the context of what's alleged here, which is a nondisclosure, where nondisclosures can be cured in the oral presentations of independent sales agents. The agent whose testimony was critical to the court's decision below, Edwin Buck, laid out a process in his declaration where he said he often meets with these individuals four or five times before they make purchases. He discusses the details of how the annuities work. He customizes those presentations. So ultimately, that led Judge Seabright to refer to what he called the cumulative effect of all of these factors, individual factors predominating over common issues. And it's not just the variations in inducements. It's the variations in policyholder behavior. Remember that these are contracts that provide for a lot of flexibility. Some people take up to 10% penalty-free out every year. Some people move their money from a fixed account to an indexed account. But in either option, they can't lose money. Some people chose these products really as a device to part money tax-deferred and pass to heirs. We have one of the named plaintiffs who did that. There are different motivations. Some people use it as a retirement income vehicle. Others as passing their estate on. All of that leads to how do we analyze. Even if we were to find that some group of these individuals had an ability to show causation, say a single agent, we've got these variations in policyholder behavior. Some people are in the fixed account. Some in the indexed account. Some have different index options. Many of these contracts have 12 different options that can be chosen, some of which might return 12, 15% in a year. Some might just go to the amount of damages. It doesn't just go to the amount of damages. It goes to the question of injury. One of the other issues here that's individualized is what did these transactions cause? We have a named plaintiff who went from a CD into this product, and she's probably done about the same over the years of her contract. We have another one, Ms. Thorson, who went from mutual funds and variable annuities, and she is probably thanking her lucky stars that she got out of stocks and got into these safe money products. So it's not just a question of calculating damages. It's whether someone has been injured by the transaction. But those are some of the variations that Judge Seabright cited. Ultimately, I think, going back to the issue of circumstances, the reason that this set of facts is not suitable, not appropriate for class treatment, is that we don't have a common inducement. In those advertising cases and in some of the cases under the UDAP and Hawaii law, you have a common inducement, an advertisement. In the First Alliance case, excuse me, Your Honor, did you have a question? It seems to me that that basically goes to whether or not they can establish liability, not necessarily whether the issues with respect to the way that they've laid it out, common issues predominate. But if there is no common inducement in these transactions, some induced perhaps by a sales brochure, some induced by agent representations, perhaps some induced by research on the Internet, if there is no common inducement, then we don't have that common causal link that would be necessary for the class to be certified. I'm not sure I follow that. That's not their claim, as I understood their claim. Their claim is a failure to disclose. I understand. The product is the commonality. They bought this product. Well, first of all, their theory is that in doing so from these agents, that certain material facts were not disclosed to them. And my point is that you cannot tell whether the nondisclosure, first of all, was not disclosed by the agent without making individual inquiry, that the agent didn't explain what the sales brochure allegedly didn't. And we also don't know for a particular person whether a nondisclosure would be material. So, as I recall, it seems to me that if Hawaii law, to determine whether you've got a deceptive product, it's an objective standard, a reason. If you look at it objectively, with a reasonable consumer, it would just be deceptive. And then you have to link that to an injury somehow. A causal nexus. Right. So would you agree in Hawaii law that the standard for determining whether you have a defective practice or product that violates the statute is objective? It's objective. Under Subsection 2, the test is, is the practice deceptive? Is it likely to mislead? But there may be people out there for whom a practice was not deceptive, even though generally for the public it was likely. Well, a reasonable person said that's the standard, isn't it? That's an objective standard. We've been living with that since first year of law school. That's true. But in order to determine whether a particular practice has caused an injury, as in the Poulos case, Poulos versus Cesar's world, in order to determine whether there has actually been that causal nexus, you need to take a look at the materiality to that individual person. So even though there can be a violation, but the violation doesn't necessarily cause an injury. We have the Flores case here in Hawaii that we cited in our brief. a few months ago where a collection agency did not properly register as a collection agency. It violated the law. But the court found that there was no recovery under Subsection 13 because there was no causal link between the injury and the alleged injury and the violation. And it's the same thing here. People buy these products for different reasons. The products perform differently. There's not necessarily a causal link between a nondisclosure about the individual. I guess that argument can be made with respect to the securities class action. They buy the securities. This stuff is in the perspective. This is what they're told and what they're not told. And you get a class action. But to say, well, each person who bought one of these securities had a different reason. I might have an old mother or you might have a baby or a grandchild or you might live in a depressed area or you might live in a different place. That's irrelevant. And so you seem to be saying you have to look, as a matter of law, at the particular circumstances of each person to see why they bought it. And I don't understand it. These products are very different than stocks. They're different than generic products. There are many different reasons why people might buy these products. And because there are many different reasons why people might buy these products, the issue of materiality of a nondisclosure is yet another individualized issue. For example, if someone buys this product simply to pass it on to their child, pass money on to the child, they are not concerned about the surrender charges. The surrender charges are the link that a plaintiff's claim causes these products to be poor performers. If a person isn't interested in withdrawing any of the money, then the withdrawal provisions are not material. So an inadequate disclosure about that doesn't cause an injury. In any event, let me address, if I may, for just a moment, the issue of superiority, because I think that's important as well, and it is a separate independent basis for affirming the decision below. Not only are the amounts in controversy here sufficient to provide an incentive to sue, but the inducements, being mostly by independent sales agents, create a situation where the real motivation to maximize a recovery here is to bring in the sales agent, where there's been a bad sale. There's a reason to pursue a common law fraud claim in many of these cases, to otherwise join parties or assert claims that are not in this class action to maximize the individual recovery of consumers. So the class action device, as Judge Seabright found, is not superior. It is a matter of vindicating the rights of consumers who have actually been harmed. There's also the manageability issue. And, Your Honor, this goes back to your point about damages. While it's not just an issue of calculating damages, there's a serious manageability problem here because we're talking about 13 different kinds of products here, some of which have as many as 12 different policyholder options to select in terms of how you credit interest and all of that. We would end up, and I believe Judge Seabright recognized this, we would end up with perhaps hundreds of little mini-trials. They might be half-day mini-trials, but hundreds of... There's lots of ways the federal courts have dealt with managing this part of the class action. You know, in Title VII litigation, there was a lot of fights over all of this. It worked out. It can work out in certain circumstances. You can write manuals. You have subclasses. You can have masters. There's all kinds of ways of dealing with it. But where you have people moving from account to account, making certain selections, withdrawing money, there is no formulaic process where the court can have some expert come in and say, here's a matrix and here it can all be done. And that's what Judge Seabright determined in his ruling, and I believe that this court should... Certainly I don't believe that Judge Seabright's analysis, after he dug into all of this with great detail, was an abuse of discretion. He's the one who asked to try this case. He looked at it, and he said class action is not superior and that there are manageability issues. Let me just close with one final point, because it's an overarching theme in the appellant's brief, and that is a phone in Judge Seabright's order would not be a threat to consumer protection in Hawaii. We're not saying that anything about the current case law in Hawaii should be changed. We're not saying that the statute should be construed in any manner different than the Hawaii Supreme Court construed in the Flores case just a few months ago. All Judge Seabright's ruling really does is to say that you don't use this particular procedure, the class action procedure, in a situation where establishing causation is a case-by-case analysis, unless there are further questions, I will sit back. Thank you. I'd like to address that last point first. I was on Maui yesterday, and Judge Seabright's decision was cited by the defendant in a class action case that I'm handling over there for this very proposition that individual reliance must be proven. Thankfully, that particular lower court circuit judge rejected that because he read the cases. Well, that's not a misdirection. But we cite the point is the other circuit judges may not. It's a published – I guess I'm going a little bit around to make the point, and I really don't have the time to do it, but this published opinion by Judge Seabright is effectively the law right now. And if you read it, he does not cite a single Hawaii case. He cites a Washington case that has been implicitly questioned by a subsequent Washington case. He cites two federal cases, one of which is a RICO case and one of which is a fraud case. Stop. That's the end of his analysis of this very central question. And that's sitting there, and defendants everywhere are citing it every week. I would ask the courts to look at the two cases that we point out. They're intermediate court of appeals cases, so they're not binding on you, but they're certainly guidance. Davis v. Wholesale Motors and Keka. In Davis, the defendant argued that plaintiff, quote, was a sophisticated consumer and hence did not rely on and was not deceived by. Not the violation question. The causation question. The court rejected that, saying, no, the actual deception thing is not – we don't do that in consumer cases. So they used that objective standard on both the violation and the causation problem. In the Keka case, there was a fraud claim and a UDAP claim under the consumer statute on the same facts. And they said, fraud claim fails because you did not rely. But the consumer case stood. Thank you very much. Thank you. The case is argued and submitted for decision. We'll hear the last case on the calendar, which is Park v. Mukasey.
judges: Schroeder, Paez, Smith